MARION F. EDWARDS, Chief Judge.
| sPlaintiffs/appellants, Kyle and Michelle Walker, individually and on behalf of their deceased daughter, Miranda Walker (Miranda), and Jeremy Walker (Jeremy); and James and Alba Allen, individually and on behalf of their daughter Tiffany Nicole Allen (Tiffany), appeal a summary judgment in favor of defendant/appellee, State of Louisiana Department of Transportation and Development (DOTD), dismissing their suits.
The tragic accident, which is the subject of this suit, occurred on May 31, 2007. On that evening, Jeremy and a guest, Amanda Mertins (Amanda), were travelling north on Louisiana Highway 626 (La.Hwy.626) in St. Charles Parish. Following them in a separate vehicle was Tiffany, who was seventeen years old, and a guest passenger, Miranda, also seventeen. At some point, Tiffany began an attempt to pass Jeremy’s car, ultimately lost control of the vehicle, and swerved off |4the highway, coming to a *702 rest in the adjacent swamp after hitting a tree. Both girls apparently drowned.
Both the Walker and Allen families (Walker/Allen) filed separate suits against the Parish of St. Charles and DOTD, alleging failure in the design and maintenance of the highway. The suits were consolidated. DOTD filed a motion for summary judgment, urging that Walker/Allen could not show that the roadway was unreasonably dangerous or defective. Following a hearing, the trial court rendered judgment in favor of DOTD, finding that nothing the DOTD did or failed to do in any way caused the accident.
A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). The initial burden of proof is with the mover to show that no genuine issue of material fact exists. If the moving party will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. The non-moving party must then produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the non-moving party fails to do so, there is no genuine issue of material fact and summary judgment should be granted. La. C.C.P. art. 966(C)(2).[1]
Appellate courts review the granting or denial of a motion for summary judgment de novo under the same criteria governing the district court’s consideration of whether summary judgment is appropriate. Specifically, appellate | .^courts must ask the same questions as the district court: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law.[2]
In connection with its motion for summary judgment, DOTD submitted certain documents. In his deposition, Jeremy stated that, on the night of the accident, he was driving at about 60-65 miles per hour on a stretch of highway where the speed limit was 55. There are no lights there and the road is bumpy. Tiffany’s vehicle was right behind him and from the rear view mirror, Jeremy saw the car make a lane change and flip. In his statement attached to the police report, Jeremy stated he saw Tiffany lose control of her car. Jeremy’s passenger, Amanda, agreed in her deposition that Jeremy was driving about 65 miles per hour. In her written statement made in connection with the police report, she stated she saw the other car’s lights in the rearview mirror, and it started to pass, then hesitated. The next thing she knew, Jeremy told her the car had flipped.
An affidavit from the investigating officer, State Trooper Christopher LeDoux, stated that, at the time of the crash, the highway was dark. The posted speed limit was 55, with the nearest speed limit sign proceeding northbound posted approximately seven-tenths of a mile south of the crash scene. There were no improved shoulders on either side of the roadway, and there was swamp water on both sides. He determined that Tiffany lost control of her vehicle after attempting to pass Jeremy’s car. According to the affidavit, Jere *703 my and Amanda told him they were driving at about 60-65 miles per hour, and it was his opinion that Tiffany was speeding at 70 miles per hour at the time of the accident, making her unable to correct when she lost control of her car. It was further his opinion that Tiffany’s “poor driving strategy” and failure to maintain control of her vehicle were the sole | ^contributing factors in causing the crash and her subsequent death. The accident report was to the same effect.
The affidavit of Simone Ardoin (Ardoin), a civil engineer at DOTD, stated that La. Hwy. 626 was originally a rural “farm to market” road, which was rebuilt by DOTD in 1935. The project took the existing shell roadway and made the shell roadbed 24 feet wide, 10 feet of which was a single-travel lane. At that time, there were no Louisiana highway construction safety standards in effect. Several more projects improved the road between 1947 and 2008. In 1955, an extra one and one-half feet of shells was added to each side of the existing 24-foot>-wide shell roadbed, and Bituminous surface oil treatments with aggregate were applied over a 20-foot width of the roadbed, then used for two lanes of travel. In 1961, a 2.25 inch overlay was applied atop the existing travel lanes and aggregate surfacing was applied on top of the existing “3 foot average shoulders on each side.” The shoulders on the roadway were irregular. The last project on the road prior to this accident occurred in 1995, when 2.56 miles of the roadway were overlaid with asphalt, on the 22-foot width of the existing road. Eleven feet of travel lane was now provided, and aggregate surfacing was added to the shoulders. At this time, according to Ardoin, the roadway had shoulders of varying widths because of the irregular nature of the shoulders on this roadway; the actual size of the shoulders could be anywhere from one foot to six feet wide but without an actual survey it would be “real hard” to say the actual width of the shoulders. None of the projects were classified as, nor considered to be, major reconstruction by DOTD partly because they did not require topographic surveys, purchase of additional rights of way, or involve federal funds. In Ardoin’s opinion, the Bituminous surface oil treatments and asphalt overlays did not constitute major reconstruction. According to Ardoin, “Major Reconstruction” projects in St. Charles Parish typically took 17several years to design, develop and complete, and would have required a full topographic survey of the entire route, required upgrades of the vertical and horizontal geometry of the roadway, and required the purchase of additional right-of-way to satisfy modern design standards.
David M. Hall, a professional engineer and certified profession traffic operations engineer, was previously qualified as an expert in highway design, maintenance, safety construction, traffic engineering, and accident reconstruction. In his affidavit, he stated that he investigated the roadway on behalf of DOTD. He reviewed the accident report and photos, depositions, etc. In his opinion, La. Hwy. 626 has never been reconstructed since being brought into the roadway system and there is, therefore, no requirement to bring it up to current design guidelines. The section of the highway was not unreasonably dangerous, had been properly maintained, and was not a cause of the accident. There was a 55 mile per hour speed limit sign located .7 miles from the site of the accident, and the edge line, center line, and no passing markings were clearly visible, and would have been so to any vehicle with its headlights on at night. The traffic control signs and markings present were not inadequate or defective, but were appropriate for the roadway conditions. There was no roadway curvature *704 that might create the need for “No Passing Zone” signage, the road striping was proper and adequate, and the shoulders were not defective. In his opinion, the cause of the accident was Tiffany’s excessive speed and her failure to maintain control of her vehicle.
Walker/Allen submitted the affidavit of Duaine T. Evans (Evans), an engineer qualified in Louisiana courts in accident reconstruction and traffic engineering, in opposing the motion. In his opinion, La. Hwy. 626 was significantly improved in 1955 and was, in fact, a major reconstruction. At that time, the geometry of the roadway was radically changed, and the travel surface |schanged from shell to surface treatment asphalt. The design standards that should have been applied at that time, those of 1947, required a minimum shoulder width of four feet. A 2001 DOTD survey showed the road had no shoulder width on the left and four feet on the right. At the time of the accident, the roadway had two-foot-wide shoulders that were only usable in dry weather or when the adjacent swamp water was not high. The photos taken at the time of the accident showed rutting and displacement of soil with little or no aggregate. The area adjacent to the accident site is described as a “grassy area.” DOTD should have been aware of poor shoulder conditions from March 1998, when the St. Charles Parish Council pointed out the need to widen the shoulders. In his opinion, DOTD should have performed the 1955 construction using guidelines that would have resulted in a minimum of 4-foot-wide aggregate shoulders, and the shoulders that existed were not inadequate for a 55 mile per hour road in any weather conditions. The west side shoulder existing at the time of the accident was incapable of supporting normal highway traffic properly. Evans concluded his affidavit stating, “It must be concluded that while the speed of this vehicle probably played a part in the path the vehicle ultimately followed, it must also be concluded that the inadequate shoulder also played a part in not providing a reasonable, safe recovery area.”
Scott Rome, a maintenance specialist employed at DOTD, testified in his deposition that there was an occasion when a state-owned tractor had to be pulled out of the water in the road in the area of the accident; the tire closest to the highway was on the edge of the water, and the other tire was further out. The tractor driver drove off into the swamp while he was moving. If you pulled four feet off the highway, you would have gotten stuck or pulled into the water.
For liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a | ¡)Specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard of care (the breach of duty element); (3) the defendant’s substandard conduct was a cause in fact of the plaintiffs injuries (the cause in fact element); (4) the defendant’s substandard conduct was a legal cause of the plaintiffs injuries (the scope of protection element); and (5) actual damages (the damage element).[3]
The question of whether a duty exists is a question of law.[4] However, breach of duty, cause in fact, and actual *705 damages are all factual issues.[5] In its finding that nothing DOTD did or failed to do caused the accident, the trial court made an impermissible material factual determination on summary judgment.
DOTD has a duty to maintain the public roadways, including adjacent shoulders and areas in the DOTD’s right-of-way, in a condition that is reasonably safe and does not present an unreasonable risk of harm to the motoring public exercising ordinary care and reasonable prudence. This duty, however, does not render DOTD the guarantor for the safety of all of the motoring public or the insurer for all injuries or damages resulting from any risk posed by obstructions on or defects in the roadway or its appurtenances.[6] Further, DOTD’s failure to design or maintain the state’s highways to modern standards does not establish the existence of a hazardous defect in and of itself. Whether DOTD has breached its duty to the public depends on all the facts and circumstances determined on a case-by-case basis.[7] The State has no duty to bring old highways up to current safety standards, unless the highway has undergone major reconstruction. Nevertheless, 1 mthe State has a duty to correct conditions existing on old highways that are unreasonably dangerous.[8] And, while failure to adhere to [ASHTO] standards may not in itself attach liability, whether DOTD has conformed to those standards is a relevant factor in determining the ultimate issue of whether the roadway is unreasonably dangerous.[9] Even without a duty to update the road in question to conform to current design standards or even to the design standards in place when it was hard-surfaced or overlaid, DOTD is not shielded from liability for all unreasonably dangerous defects in the road.[10]
The next issues to be determined are whether or not DOTD breached its duty, which breach resulted in an unreasonably dangerous road, and whether any such breach was a cause-in-fact of the damages sustained here.
While it is uncontested that Tiffany was exceeding the speed limit while attempting to pass, whether or not these actions were the sole cause of the accident are questions of fact put at issue by Evans’ affidavit. As opposed to the affidavits of Ardoin and Hall, Evans opined that the work performed in 1955 was major road reconstruction, that DOTD did not conform to the design standards in effect at that time, and that the west-side shoulder was incapable of supporting traffic properly. Thus, there is at least one question of fact. There appears to be a question of fact regarding DOTD’s obligation to bring the area up to more current safety standards.
Further, Evans stated that the purpose of shoulders is to provide an area for drivers who exit the travel lane to *706 attempt to stop the vehicle or recover and return safely to the highway, and the existing shoulder area could not provide that even at the posted speed limit. He concluded that the inadequate shoulder did not provide a reasonable and safe recovery area. Rome’s deposition underscores the Insignificance of this issue. Under Louisiana’s comparative fault scheme, more than one party may be at fault for the damages sustained in a vehicular accident. Where there are concurrent causes of an accident, the proper inquiry is whether the conduct in question was a substantial factor in bringing about the accident. Whether the defendant’s conduct was a substantial factor in bringing about the harm and, thus, a cause in fact of the injuries, is a factual question to be determined by the fact finder.[11] The question of a possible breach of duty by DOTD, which may be a contributing cause of the accident, has been put at issue.
Without determining other possible questions regarding the road conditions, signage, etc., we find there are questions of material fact precluding summary judgment. For these reasons, the judgment is reversed, and the case remanded for further proceedings.

REVERSED AND REMANDED.

. See also, Hubbard v. Jefferson Parish Parks and Recreation, 10-24 (La.App. 5 Cir. 5/25/10), 40 So.3d 1106, writ denied, 10-1486 (La. 10/1/10), 45 So.3d 1102.

. Id.

. Pinsonneault v. Merchants & Farmers Bank & Trust Co., 01-2217 (La.4/3/02), 816 So.2d 270.

. Romero v. Bellina, 01-274 (La.App. 5 Cir. 9/25/01), 798 So.2d 279, writ denied, 01-2852 (La. 1/11/02), 807 So.2d 237.

. Clarkston v. La. Farm Bureau Cas. Ins. Co., 07-0158 (La.App. 4 Cir. 7/2/08), 989 So.2d 164, writ denied, 08-1768 (La.10/31/08), 994 So.2d 539 (citing Snearl v. Mercer, 99-1738 (La.App. 1 Cir.2/16/01), 780 So.2d 563, 574, writs denied, 01-1319 and 01-1320 (La.6/22/01), 794 So.2d 800 and 801).

. Forbes v. Cockerham, 08-0762 (La.1/21/09), 5 So.3d 839.

. Id.

. Cormier v. Comeaux, 98-2378 (La.7/7/99), 748 So.2d 1123.

. Moss v. State, 07-1686 (La.App. 1 Cir. 8/8/08), 993 So.2d 687, writ denied, 08-2166 (La.11/14/08), 996 So.2d 1092.

. Id. (citing Petre v. State, ex rel. Dep't of Transp. and Dev., 01-0876 (La.4/3/02), 817 So.2d 1107).

. See, Bonin v. Ferrellgas, Inc., 03-3024 (La.7/2/04), 877 So.2d 89. Also see, Clarkston v. La. Farm Bureau Cas. Ins. Co., supra; Snearl v. Mercer, 99-1738 (La.App. 1 Cir.2/16/01), 780 So.2d 563, writs denied, 01-1319 and 01-1320 (La.6/22/01), 794 So.2d 800 and 801.