# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 12, 2012

Lyle W. Cayce
Clerk

No. 11-20116

GARY GEORGE,

Plaintiff–Appellant

v.

NABORS OFFSHORE CORPORATION,

Defendant–Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CV-1884

Before JONES, Chief Judge, PRADO and SOUTHWICK, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:[*]

Plaintiff–Appellant Gary George was working on an offshore platform owned by Chevron USA ("Chevron") when he tripped over hoses stacked upon the platform's deck and fractured his ankle. George sued Chevron and Nabors Offshore Corporation ("Nabors"), the company Chevron had hired to conduct drilling operations. George claimed that Nabors owned the hoses; the hoses constituted an unreasonably dangerous condition; Nabors owed him a duty to either correct the condition or warn him of its existence; and Nabors breached

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20116

that duty.  Nabors and Chevron moved for summary judgment, arguing that the hoses were open and obvious and therefore not unreasonably dangerous.  The district court granted Nabors's and Chevron's motions, and George appealed only the summary judgment granted to Nabors.  We affirm.

## I.  BACKGROUND

Gary George was employed as a welder by Dynamic Industries ("Dynamic").  On January 29, 2008, George was part of a Dynamic welding crew that was removing a bullfrog crane from an offshore platform owned by Chevron and located off the coast of Louisiana.  George had eighteen years of experience on offshore platforms and had been involved regularly in the removal of cranes and rigs from platforms.  Chevron had contracted with Dynamic to perform welding services on its platform.  Also on the platform that day was a crew from Nabors, which Chevron had contracted with to conduct drilling operations on its platform.  Nabors owned the drilling rig that had been used on the platform, and removed the day before.  Nabors was in the process of cleaning and packing its equipment in preparation to leave the platform.  Nabors and Dynamic did not have a contractual relationship.

On the day of the accident, George was walking from the galley to his worksite near the bullfrog crane.  To access his worksite, George had to cross a beam running down the middle of the platform that supported the platform crane.  There were scaffolding stairs set up to get from one side of the platform crane beam to the other.  George had planned to use the scaffolding stairs to cross to the other side of the platform crane beam, then use a two-foot-wide walkway right next to that beam to access his worksite.  When he reached the other side of the beam, however, he saw that the walkway alongside the beam was blocked by Nabors riggers who had a fuel tank suspended in the air by a crane, and were emptying that fuel tank into another.  George decided to access his worksite by crossing a portion of the deck which was covered with coiled

No. 11-20116

hoses six to eight inches deep. He thought he could negotiate the hoses safely and knew that he had to be careful when walking across them. He took about five steps across the coiled hoses and saw that this path to his worksite was blocked by about 200 fuel tanks. George then turned around to retreat back to the platform crane beam and look for another way to his worksite. His foot caught on a hose, knocking him off balance, and as he fell he twisted his ankle, fracturing it. There were no witnesses to the accident.

In April 2009, George sued Chevron and Nabors in Texas state court. In June 2009, Nabors filed a notice of removal in the Southern District of Texas, asserting jurisdiction under 28 U.S.C. § 1331 based on the Outer Continental Shelf Land Act ("OCSLA"), 43 U.S.C. §1301. Nabors and Chevron each filed a motion for summary judgment, arguing that they owed George no duty under Louisiana law.[1] George did not oppose Chevron's motion. The district court granted Chevron's and Nabors's motions, and then denied George's motion to reconsider. George timely appealed the district court's grant of summary judgment to Nabors—but not to Chevron—arguing that the district court erred in ruling that the coiled hoses were open and obvious and therefore did not, as a matter of law, constitute an unreasonably dangerous condition

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo, applying the same standards as the district court. *Int'l Fid. Ins. Co. v. Sweet Little Mex. Corp.*, 665 F.3d 671, 679 (5th Cir. 2011). Summary judgment is appropriate if the movant shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Id.* (citing Fed. R. Civ. P.

---

[1] The parties agree that Louisiana law governs this case because it arises under OCSLA and "OCSLA adopts the law of the adjacent state (Louisiana) as surrogate federal law, to the extent that it is not inconsistent with other federal laws and regulations." *Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 560 (5th Cir. 2003).

No. 11-20116

56(a)). In reviewing the record, all facts and inferences are construed in the light most favorable to the non-moving party. *Id.*

## III. DISCUSSION

"Under Louisiana jurisprudence generally, a contractor owes an obligation toward third persons to refrain from creating a hazardous condition." *Lafont v. Chevron, U.S.A., Inc.*, 593 So. 2d 416, 420 (La. Ct. App. 1991). "[A]t the very least, [contractors] owe[ third parties] the duty to refrain from gross, willful or wanton negligence, and at most the duty to refrain from creating an unreasonable risk of harm or a hazardous condition." *Id.* Louisiana courts have adopted a four-part test to determine whether a condition is hazardous or unreasonably dangerous: "(1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, which includes the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of its social utility, or whether it is dangerous by nature." *Dauzat v. Curnest Guillot Logging Inc.*, 995 So. 2d 1184, 1186–87 (La. 2008).

Focusing on the second part of that test, the Supreme Court of Louisiana has stated that "[i]f the facts of a particular case show that the complained-of condition should be obvious to all, the condition may not be unreasonably dangerous, and the defendant may owe no duty to the plaintiff." *Id.* at 1186. "A landowner is not liable for an injury which results from a condition which should have been observed by the individual in the exercise of reasonable care, or which was as obvious to a visitor as it was to the landowner."[2] *Id.* "The question of whether a duty exists is a question of law." *Walker v. La. Dep't of Transp. & Dev.*, 61 So. 3d 699, 705 (La. Ct. App. 2011).

---

[2] Courts analogize the duty of an offshore platform occupier to that of a land owner or occupier. *See, e.g.*, *Ellis v. Chevron U.S.A. Inc.*, 650 F.2d 94, 97–98 (5th Cir. 1981).

No. 11-20116

As the district court correctly determined, any reasonable person walking over the hoses would have realized their potential danger. George, with eighteen years of experience on offshore platforms, admitted in his deposition that he saw the hoses, knew they posed a possible danger, and knew that he had to cross them with caution. The danger posed by heavy coiled hoses piled six to eight inches deep is "obvious to all," *Dauzat*, 995 So. 2d at 1186, and was particularly obvious to George considering his considerable offshore platform experience. *See Walker v. Union Oil Mill, Inc.*, 369 So. 2d 1043, 1047 (La. 1979) ("[I]n considering a defendant's duty to a particular person, consideration should be given to the person's age, maturity, experience, familiarity with the premises and its dangers, and other such factors which might increase or decrease the risk of harm to that person.").

George argues that summary judgment on the issue of whether a condition is open and obvious is only appropriate where the evidence demonstrates conclusively that the risk of harm was not only obvious, but was also easily avoidable. *See Butzman v. La. Power & Light Co.*, 694 So. 2d 514 (La. Ct. App. 1997).[3] Because there was no alternative route to his worksite, George argues, he could not have avoided walking across the coiled hoses. Like the district court, we are unconvinced that the existence of an alternative route affects the unreasonably dangerous analysis. Louisiana's rule is clear: landowners have no duty where the condition "should have been observed by the individual in the exercise of reasonable care," or was "as obvious to a visitor as it was to the landowner." *Dauzat*, 995 So. 2d at 1186. The undisputed evidence shows that

---

[3] George also argues that Section 343A of the Restatement (Second) of Torts—which Louisiana courts have not adopted—supports his argument that to be considered not unreasonably dangerous as a matter of law, a condition must be easily avoidable in addition to open and obvious. We are not persuaded by this argument because Section 343A, along with its comments and examples, involves "anticipation" of harm where public land or a public utility is involved, and therefore does not speak directly to the facts of this case.

No. 11-20116

George observed the coiled hoses and appreciated the danger they posed.  We therefore agree with the district court that the coiled hoses were so open and obvious that they did not, as a matter of law, constitute an unreasonably dangerous condition; accordingly, Nabors did not owe George a duty to warn or cure the danger posed by the hoses.  *See id.* at 1186–87.

## IV.  CONCLUSION

For the foregoing reasons, we affirm the district court's order granting summary judgment to Nabors.

AFFIRMED.