289 So.2d 323 (1973)
Harvey JOHNSON and Dorothy Johnson, Plaintiffs-Appellees,
v.
FRED H. MORAN CONSTRUCTION COMPANY et al., Defendants-Appellants.
No. 9654.
Court of Appeal of Louisiana, First Circuit.
December 17, 1973.
Rehearing Denied February 11, 1974.
Writ Refused April 11, 1974.
*324 Gerald L. Walter, Jr., Baton Rouge, for defendants-appellants.
Gordon M. White, Baton Rouge, for plaintiffs-appellees.
Anthony J. Clesi, Jr., Baton Rouge, for defendant-appellant, U. S. Fidelity and Guaranty.
Before SARTAIN, LANDRY and WATSON, JJ.
SARTAIN, Judge.
This is a slip and fall case which occurred on the sidewalk located on the premises of the Baton Rouge General Hospital in the City of Baton Rouge, Louisiana, on December 21, 1971.
Mrs. Dorothy Johnson was employed in the credit department of the Baton Rouge General Hospital on the date of the accident. At this point in time extensive renovations were underway on the fourth floor of the hospital. The principal contractor was Fred H. Moran Construction Company, Inc. One of its subcontractors was Louis Mechanical Contractors, Inc. The hospital faces north and is bordered by a driveway on its front. Parallel to the driveway is a sidewalk. A scaffold-type elevator was installed between the driveway and sidewalk and the hospital building itself, which was used for the purpose of lifting materials and supplies to the fourth floor of the hospital. It was customary for the principal contractor and his subcontractors to back their vehicles in a southerly direction from the driveway, across the sidewalk and lawn area to the elevator. On the day in question, a truck had been backed up to the elevator and on its departure deposited mud from its tires onto the sidewalk and driveway. Plaintiff slipped on the mud deposited on the sidewalk when she was walking in a westerly direction from the main entrance of the hospital to another building where the credit department was housed. The evidence indicates that the accident occurred at approximately 2:30 p. m. o'clock. Though it had not rained that day, the record reflects that it rained within a two to three day period prior to the day of the accident. It is clearly undisputed that there was mud on the sidewalk, but the extent thereof is in serious dispute.
Plaintiff sued the principal and subcontractor mentioned above and their liability insurers, United States Fidelity & Guaranty Company, and Hartford Accident and *325 Indemnity Company, respectively. From a judgment in favor of the plaintiffs, including medical expenses sought by Mr. Johnson on behalf of the community, and against the subcontractor, Louis Mechanical Contractors, Inc. and its liability insurer, in the amounts of $15,000.00 for personal injuries and special damages of $2,164.00, defendants have appealed. The trial court exonerated the principal contractor. We affirm.
The trial judge in his oral reasons for judgment stated:
"The conclusion of the Court relative to the facts and the law in the case is as follows: At the time of the fall there was mud on both the sidewalk and the driveway area thereby rendering it immaterial whether the plaintiff walked on the sidewalk or the driveway. The degree of mud is not definitive insofar as the evidence is concerned, but there was not so much as would necessarily alert a pedestrian to obvious danger. As we stated, the plaintiff had safely traversed this condition just prior to the accident. The Court further concludes that there was, considering the entire area of the Baton Rouge General Hospital and the available entrances, no convenient alternative route for the plaintiff to take in order to avoid the mud. The plaintiff cannot be held to have had available an alternative route without unreasonable delay and inconvenience. There was only one entrance to the hospital which lended itself to being an alternative route, and the evidence shows clearly that the employees of the hospital had been asked and required not to use that particular entrance except in extreme weather and then only for exit purposes. At the time of the accident it was not raining. We hold that the subcontractor, Louis Mechanical Contractors, Incorporated, was negligent in leaving the mud in the area where the plaintiff fell. We find that the general contractor was not negligent, and accordingly, the suit against its insurer, United States Fidelity and Guaranty Company, must be dismissed."
While denying liability the defendants raised the issue of contributory negligence on the part of Mrs. Johnson. In response to this issue the judge a quo stated:
"This brings us to the question of contributory negligence. Again, as stated, the plaintiff in this case had just safely traversed the distance. We think that she was reasonably observant. She testified that at the last moment she saw the piece of mud upon which she slipped and attempted to avoid it but failed to do so. We do not believe that a fifty-seven year old woman, walking downhill, conversing with a companion, and observing to some degree the ground before her, and in fact seeing what she actually slipped upon, can be held to any greater degree of care than that observed by her at the time. Plaintiff used this walk some three or four times a week, according to the testimony. She knew that there was mud or that there had been mud there. As we say, she did momentarily see the mud. She tried to step over it, tried to alter her step, but did in fact slip as she stepped upon it. This is borne out by the testimony of Miss Duke who was accompanying her at the time.
The plaintiff further testified that prior to the date of the accident, when she realized that there was lots of mud on the sidewalk and in the street, that she would not attempt to traverse it; that younger people in her office would go to the main building to take care of the necessary business. Of the particular day in question she stated, `I thought I went over there, I could go back.' We're not going to say that this is one of those cases which jumps out at you with a conclusion of law, but we do not think that this lady was unreasonable in taking the path that she did take and we cannot hold her to a duty of watching every step that she takes in such circumstances. The negligence of the aforesaid *326 subcontractor was the sole proximate cause of the accident."
Appellants have cited ten specifications of error, two of which deal with damages for personal injuries and quantum therefor.
We do not deem it necessary to detail each specific assignment of error as they are interrelated and somewhat overlapping.
Contrary to appellants' contention the record is abundantly clear that the mud placed on the sidewalk and driveway was the result of appellant's use of the elevator sometime prior to the accident. While there were other parties who used the elevator and of necessity had to traverse the sidewalk, there is no testimony to the effect that anyone other than Louis Mechanical Contractors, Inc. did so on the day of the accident. Our perusal of the record convinces us that there was a moderate degree of mud on the sidewalk which lessened in density on the driveway, or as one witness stated, "the mud petered out" on the driveway. Further, the evidence does not support the conclusion that the quantity of mud was such as to forewarn anyone using the sidewalk of its dangerous propensity.
It is recognized, and appellants heavily rely upon the testimony of Miss Duke, who was accompanying Mrs. Johnson when she fell, that she first described the piece of dirt upon which Mrs. Johnson stepped as a "clod". When pressed as to its size, she equated it to the proportions of a "cantaloupe".
This description is clearly refuted by employees of the principal contractor and the subcontractor who cleared the sidewalk with a shovel and broom immediately following the accident. It was the testimony of these employees that there was some dirt along the tire marks left on the sidewalk by the vehicle but that they were not big and presented no problem when the sidewalk was swept clean. We can readily assume that if there were clods of dirt the size of a cantaloupe scattered across the width of the sidewalk, Mrs. Johnson would have been expected to have discerned the same and avoided crossing the tracks and the mud.
Mrs. Johnson testified that she used the sidewalk three or four times a day to go to the main office of the hospital, that she was familiar with the fact that construction was in progress, and that on occasion the debris or mud was quite noticeable. The hospital administrator had to call this situation to the attention of the principal contractor a week or two weeks prior to the accident. However, steps were taken at that time to remedy the situation and an effort was made to keep the sidewalk clear. There were wooden barricades present on the construction site which were to be used to protect pedestrian traffic when vehicles were in use and traveling back and forth across the sidewalk. At the time of the accident these barricades were not in use as undoubtedly defendant's truck had previously deposited its equipment near the elevator and had departed prior to Mrs. Johnson's use of the sidewalk.
For these reasons we find that the record clearly supports the factual conclusions reached by the trial judge. Further, there is a duty on the part of a subcontractor to refrain from creating a potential danger or to permit an unsafe condition to remain on the premises upon which such subcontractor is working where it is known that the premises are in use by either the general public or employees of the owner.

QUANTUM
As a result of the accident Mrs. Johnson sustained a "comminuted trimalleolar fracture of the right ankle". She underwent surgery and the fractured bone was maintained in place with a two inch screw through the tip of the medial malleolus. There was a great deal of swelling, she remained in the hospital for a period *327 longer than usual. Her ankle was placed in a cast which was not removed until January 24, 1972. Following the removal of the cast the ankle was immobilized with an Ace bandage but it was still swollen. She was not able to return to work until April of 1972. However, following her return to work and up until the date of the trial, April 12, 1973, she continued to have difficulty with the ankle, with accompanying stiffness, swelling, pain and limitation of motion. It was the opinion of the orthopedist specialist who treated her that the metal screw would ultimately have to be surgically removed. Further, she developed a bursitis of her right hip which was attributed to a bruise she sustained when she fell. Residual disability consisted of mascomotor instability and was fixed at twenty percent of the ankle.
In addition, on November 6, 1972, she was hospitalized with severe chest pains. Her treating physician on that occasion, Dr. Henry B. Harvey, Jr., a specialist in internal medicine, opined that she was suffering from a coronary insufficiency which he attributed to the emotional stress and strain occasioned by the injury she had received on December 21, 1971 when she fell. The doctor very clearly stated that the anatomic basis for plaintiff's heart disease is unknown but he unequivocally stated that the accident aggravated a pre-existing coronary condition. His testimony in this respect stands alone and unrebutted in the record and is sufficient to show a direct causal connection between the accident and the coronary difficulty.
For these injuries Mrs. Johnson was awarded the sum of $15,000.00. While appellants contend that this award is excessive and should be reduced, we do not find such an award so excessive as to constitute an abuse of the discretion that is vested in the trier of fact in the assessment of damages for personal injuries.
The award of $2,164.00 for special damages constitutes loss of earnings totaling $1,412.40, contributions to her retirement plan in the amount of $61.60, medical expenses to date in the amount of $440.00, and future medical in the amount of $250.00. These awards are clearly supported by the record.
Accordingly, for the above and foregoing reasons the judgment of the district court is affirmed at appellants' costs.
Affirmed.