316 So.2d 826 (1975)
Russell ORTEGO, Plaintiff-Appellant,
v.
STATE BANK AND TRUST COMPANY OF GOLDEN MEADOW, Defendant-Appellee.
No. 10312.
Court of Appeal of Louisiana, First Circuit.
June 30, 1975.
Rehearing Denied August 26, 1975.
Writ Refused October 24, 1975.
*827 Charley J. Schrader, Jr., Houma, for plaintiff-appellant.
C. Alan Lasseigne, Thibodaux, for defendant-appellee.
Before SARTAIN, ELLIS and BARNETTE, JJ.
SARTAIN, Judge.
Plaintiff's minor child, Tammy Lou Ortego, was injured on August 8, 1969, when a check writing table fell on her at the offices of State Bank & Trust Company of Golden Meadow (Bank), Golden Meadow, Louisiana.
As administrator of his minor daughter's estate, plaintiff initially sued the Bank and subsequently by supplemental and amending petition, plaintiff joined as additional defendants, Mr. James Alario, an officer of the Bank, and Volunteer Construction Company, Inc. (Volunteer). The claims against the Bank and Mr. Alario were settled with reservation and trial on the merits was had against Volunteer. From an adverse judgment in the district court, plaintiff appeals. We affirm.
The record reflects that on September 10, 1968, the Bank, as owner, and Volunteer, as contractor, entered into a contract for extensive renovations to the Bank's facilities at Golden Meadow, Louisiana. This work was to be performed in accordance with plans and specifications prepared by and under the supervision of Mr. Ernest E. Verges, an architect with Ernest E. Verges & Associates, Inc. Plans and specifications are not in the record. However, the record does contain a certificate of substantial completion. It was signed by the architect on February 25, 1969; by Volunteer on February 26, 1969, and by Mr. Alario, representing the Bank, on February 27, 1969.
According to the testimony a greater portion of the renovations were to be performed by Volunteer. However, another contract was entered into with Sampson Safe Company (Sampson) for the task of recovering the teller counters and two check writing tables with formica. The contract between the Bank and Sampson is not in the record.
The trial judge in his written reasons for judgment rejected plaintiff's claim on the basis of L.R.S. 9:2771, which provides as follows:
"No contractor shall be liable for destruction or deterioration of or defects in any work constructed, or under construction, by him if he constructed, or is constructing, the work according to plans or specifications furnished to him which he did not make or cause to be made and if the destruction, deterioration or defect was due to any fault or insufficiency of the plans or specifications. This provision shall apply regardless of whether the destruction, deterioration or defect occurs or becomes evident prior to or after delivery of the work to the owner or prior to or after acceptance of the work by the owner. The provisions of this Section shall not be subject to waiver by the contractor." *828 Plaintiff contends on appeal that the trial judge erred in holding L.R.S. 9:2771 applicable; in failing to find that Volunteer owed a duty ex delicto to third parties for personal injuries sustained on the premises; in failing to find that Volunteer's failure to secure the check writing table to the wall was negligence and a cause in fact of the injuries sustained by the child; and, in failing to award damages.
It is admitted by representatives of Volunteer that it was necessary for them to remove the check writing table from the wall to which it was originally attached. A "wrecking bar" was used to release the table from the wall by prying it loose. During the course of Volunteer's work the table was moved from place to place within the building and was continued in use by the customers of the Bank. The Bank remained open for business while construction was in progress. It is the testimony of witnesses for Volunteer that when it completed its work the check writing table had not been covered with the new formica by Sampson. It is Volunteer's contention that after it finished its work and the job was accepted that Sampson then performed its work on the table and the counters. Volunteer argues that the plans and specifications did not call for it to be responsible for securing the table to the wall and that if the same was not secured to the wall it was the result of fault on the part of either Sampson or the architect.
When the certificate of substantial completion, above, was executed, Volunteer was given a typical "punch-list" by the architect and within two weeks or around the first of March, 1969, it had left the job site after having fully completed all the work required of it.
The trial judge, while holding Volunteer statutorily immune from liability, concluded that the accident occurred between the time that Volunteer left the job and Sampson was able to do its work on the counters and table. We find the record dictates to the contrary. Inasmuch as the plans and specifications are not in the record we are unable to determine whether they specifically included or excluded the attachment of the table to the wall. The architect was not called to testify nor were any representatives of Sampson.
We do not choose to base our decision herein on the alleged statutory immunity provided for in L.R.S. 9:2771. A literal reading of this statute would lead to the conclusion that injury to third parties is not contemplated. Thus, the general rule that a contractor does owe an obligation to third parties to refrain from creating a hazardous condition is applicable. Johnson v. Fred H. Moran Construction Co., 289 So.2d 323 (1st La.App., 1973), writs refused, La., 293 So.2d 171. We readily concede that a contractor or subcontractor who adheres strictly to plans and specifications furnished by experts of the owner may be relieved of liability to third parties when said contractor has no reason to doubt the deficiencies contained in such plans and specifications would lead to a dangerous situation. Pittman Construction Co. v. City of New Orleans, 178 So.2d 312 (4th La.App., 1965), writs refused, 248 La. 434, 179 So.2d 274. Thus, where the plans and specifications are deficient and an injury results from the work of a contractor who is endeavoring to follow such plans and specifications, the fault for resulting injuries rests with the persons preparing such plans and specifications. In cases of this type it is a question of fact and a contractor can be held responsible only if he has justifiable reason to believe that adherence to plans and specifications would create a hazardous condition.
The evidence in the case at bar convinces us that when Volunteer left the job, Sampson had not commenced its work on the counters and tables. Immediately after the accident plaintiff himself very carefully examined the check writing table which fell on his daughter and stated unequiocally *829 that the brackets attached to the table were new and had never been used to secure the table to the wall. There were no marks on the brackets whatsoever either indicating that screws had been used, or more particularly, that they had been forcibly removed from a secured position by the use of a wrecking bar.
From this testimony we can conclude that only after Volunteer left the job did Sampson do its work on the table. There is conflict in the testimony as to the color of the table prior to its recovering. The preponderance of the evidence in this respect is to the effect that it was of a different color at the time of the accident than it was when Volunteer completed its work.
It is for this reason that we must hold that the plaintiff has failed to bear the burden of proving that the table itself was the responsibility of Volunteer or that Volunteer had left it in a dangerous position.
Accordingly, for the above reasons, the judgment of the district court is affirmed at appellant's costs.
Affirmed.