GONZALES, Judge.
This is a suit in tort by the employee of an independent contractor against another independent contractor.
Originally, plaintiff, Irvin Lafont, sued both his contractor’s (Irvin Lafont Contractors, Inc.) principal, Chevron U.S.A. Inc. (“Chevron”), and another independent contractor, Danos & Curóle Marine Contractors, Inc. (“Danos”). After trial on the merits, the trial court found plaintiff had no right of action sua sponte, concluding that plaintiff was a statutory employee and dismissing the case as to both defendants. Prior to a decision on appeal, plaintiff settled with and dismissed Chevron. On appeal, this court held that the trial court erred in dismissing plaintiff's tort suit against Danos, finding that if there was a statutory employer it was Chevron, and, that plaintiff was not a borrowed employee of Danos, rather, merely that plaintiff had provided temporary services to Danos as a courtesy or gratuity. Lafont v. Chevron U.S.A., Inc., 545 So.2d 1308 (La.App. 1st Cir.1989). Although the record was complete, the matter was remanded to the trial court for a determination by the trier of fact as to the liability of Danos and the damages, if any, due plaintiff. On remand, the trial court found Danos owed plaintiff no duty since there was no employment relationship between them and Danos had *418 no control over the work area; judgment was rendered dismissing Danos.
From this judgment, plaintiff has appealed and makes the following assignments of error:
1) The trial court erred in failing to find tort liability on the part of Danos in that it is contended that Danos owed a duty to the plaintiff, which was breached, and the breach caused plaintiffs accident and injury, thus rendering Danos liable.
2) The trial court erred in failing to find that defendant Danos knew that a dangerous condition existed and failed to take steps to advise, supervise and warn plaintiff pertaining to the dangerous condition.
3) The trial court erred in failing to find plaintiff suffered damages as a result of the accident and injury.
FACTS
Plaintiffs employer[2] was under contract with Chevron to perform carpentry and maintenance tasks at its Leeville shore base. Danos was under contract with Chevron to maintain the Leeville shore base yard; Danos employees completed such duties as loading and unloading trucks and boats, and dumping garbage. Nolan Boudreaux, Sr., the Danos foreman, testified that plaintiff and Danos employees routinely exchanged assistance to one another with their respective duties. Mr. Boudreaux stated that when Mr. Lafont did not have much work of his own to do, he would volunteer to assist Danos employees. Additionally, Mr. Boudreaux stated that Danos employees would ask plaintiff to assist them, and he would do so if he did not have other more important assignments; this was verified by plaintiff.
Although plaintiff stated that he took orders from Danos supervisors as well as Chevron supervisors, he admitted that, he could refuse to do work that Danos employees asked him to do and that only Chevron had the authority to fire him. The Danos witness testified that plaintiffs supervisors were Chevron employees.
Plaintiff was injured on September 29, 1985, assisting Danos employees in dumping garbage, when he slipped and fell from a garbage dumpster. It was established that there were two types of garbage containers being dumped that day into a larger “Solid Waste” dumpster. One was known as a “Gulf” box[3], and was distinguishable from the other “Chevron” box because it had “eyes” at each top corner for hooking to a crane, and it had a gate on one end. The procedure for dumping the smaller garbage containers into the larger dumpster involved a crane lifting the “Gulf” or “Chevron” box into the “Solid Waste” dumpster, and, two men climbing onto the dumpster and moving the crane lines attached to the garbage container so it could be dumped. On the “Gulf” box the crane lines merely had to be moved to the side of the box opposite the gate so that when lifted, the gate would slide open and the contents dumped. However, since the “Chevron” box had no gate, the crane lines had to be moved to the bottom of the box so that it could be turned over and dumped. To accomplish this, the men had to climb into the dumpster. All of the witness to the accident except plaintiff, testified that it was a “Gulf” box which was being dumped at the time of plaintiff’s accident; plaintiff stated it was a “Chevron” box. Plaintiff testified that he had to get into the dumpster immediately before the accident; however, the other witness testified that because of the type of box being dumped, it was not necessary for plaintiff to get into the dumpster.
As plaintiff was climbing down from the dumpster, his foot slipped and he fell to the ground. Plaintiff stated at trial, “I [sic] have grease and food and all in that trash.” The accident report completed by Chevron employees stated there was “[gjrease in *419 side of [the] trash box.” The Chevron employee who signed the accident report, John Bell, testified that he did not personally verify the information contained therein.
DUTY OWED A FELLOW INDEPENDENT CONTRACTOR
Plaintiff argues that Danos supervisory personnel had a duty “to instruct workers as to proper, safe work techniques as well as a personal responsibility to inspect and eliminate any unsafe conditions.” Plaintiff further argues that such a duty arises from the concept that “actual or constructive knowledge of a risk of injury gives rise to the duty to take reasonable steps to protect against injurious consequences resulting from that risk.” Plaintiff alleges that Danos employees “knew this was a dangerous working enviroment [sic] and failed to take adequate steps to supervise, warn and advise plaintiff pertaining to the dangerous condition.” The only dangerous condition which plaintiff points to is the manner of dumping the garbage which “required plaintiff to stand in garbage inside the larger bin”, noting that plaintiff “slipped due to grease on his shoes....”
The trial court found that:
The duty to provide a worker with a safe place to work, including proper tools, equipment, and methods for safely performing his duties, is primarily that of an employer. Kent v. Gulf State Utilities Co., 418 So.2d 493 (La.1982). A relationship, also, exists between parties where: (1) there is a valid contract between them, and (2) the work being done is of an independent nature employing nonexclusive means in accomplishing it, and (3) the work is done according to the independent contractor’s own methods without being subject to the control and direction of the principal, and (4) there is a specific price and time for the work agreed on, not subject to termination at the will of either side without liability for the breach. Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385 (1972).
Danos owed the plaintiff no duty, since no relationship existed, either as an employer/employee or as a principal/contractor. Danos did not hire the plaintiff; therefore, he was not an employee of Danos, nor was there a contract between Danos and the plaintiff. The plaintiff was not under Danos’ control or supervision, nor was Danos able to terminate the plaintiff’s employment. The plaintiff was employed by Chevron to perform certain independent tasks. Danos had no operational control over the plaintiff or the work area, as it was an independent contractor of the same status as Lafont.
The plaintiff also alleges that the garbage bin he helped Danos’ employees empty was defective. Under LSA-C.C. art. 2317, when harm results from a defect in a thing, the person in whose custody the thing is when the harm results is liable for the damage caused. Loescher v. Parr, 324 So.2d 441 (La.1975). Again, Danos had no operation [sic] control over the work area, and was not the owner or custodian of the garbage bin. Danos was merely another contractor working on the same work site as the plaintiff.
Even if it was determined that the garbage bin was in the custody of Danos, the plaintiff would still have the burden of proof that there was a defect in the thing which created an unreasonable risk of harm to others, and that the damage resulted from the defect. Sikes v. McLean Trucking Company, 383 So.2d 111 (La.App. 3 Cir.1980).
A defect is a flaw or fault existing or inherent in the thing itself that creates an unreasonable risk of harm to others. The temporary presence of a foreign substance is not a defect for the purpose of imposing liability under LSA-C.C. art. 2317. The substance is not a flaw or fault which exist [sic] in the thing itself. Garrett v. City of Baton Rouge, 521 So.2d 638 (La.App. 1 Cir.l988)[, writ denied, 523 So.2d 235 (La.1988)]. The grease was not a defect or flaw inherent in the garbage bin. The plaintiff should have been aware that there was the possibility of grease or, for that matter, any *420 other foreign substance in the bin that could have caused him to slip and injure himself, since the garbage bin was designed for the purpose of disposing of such substances, and that to encounter such a risk was inherent in the nature of the activity itself.
It is apparent from the record that the plaintiff was injured due to a foreign substance on his shoe, namely grease, causing him to slip, and not from a defect in the garbage bin itself, or as a result of the means or lack of means for ingress and egress.
The trial court found as a matter of fact that the presence of a foreign substance in the dumpster caused plaintiff to slip, Da-nos was not the owner or custodian of the dumpster, and, Danos had no operational control over the work area. We find no error in these findings. However, to say that Danos owed no duty to plaintiff is not legally correct.
The duty owed a fellow independent contractor is discussed in 65 C.J.S., Negligence, § 63(113) (1966) as follows:
As between two independent contractors who work on the same premises, either at the same time or one following the other, each owes to the employees of the other the same duty of exercising ordinary care as they owe to the public generally; and where a subcontractor engages the employees of the general contractor to perform a particular operation, he owes such employees the duty of due care.
The use by the employee of one contractor of a ladder of another contractor does not render the latter contractor liable, since he owes no duty of care, in the absence of an express invitation to use the ladder.
Under Louisiana jurisprudence generally, a contractor owes an obligation toward third persons to refrain from creating a hazardous condition. Ortego v. State Bank and Trust Company of Golden Meadow, 316 So.2d 826 (La.App. 1st Cir.), writ denied, 320 So.2d 914 (La.1975); Johnson v. Fred H. Moran Construction Company, 289 So.2d 323 (La.App. 1st Cir.1973), writ refused, 293 So.2d 171 (La.1974). Where the third person has volunteered to assist the contractor, varying duties have been imposed. In Lynch v. Cities Service Refining Corporation, 52 So.2d 456 (La.App. 1st Cir.1951), the court found that the plaintiff (an employee of a contractor) was a simple volunteer and as such could not recover unless the tortfeasor (an employee of the landowner on which plaintiff was working) was guilty of gross negligence by willfulness or wantonness. More recently, in LeBleu v. Dynamic Industrial Constructors, Inc., 526 So.2d 1184 (La.App. 3rd Cir.), writ denied, 528 So.2d 154 (La.1988), the court found an employee of an independent contractor acted unreasonably and created an unreasonable risk of harm resulting in injury to an employee of another company who had volunteered to assist in moving an office trailer, when he attempted to hitch the trailer to his truck using only a pry bar.
Consequently, we must conclude that at the very least, Danos owed plaintiff the duty to refrain from gross, willful or wanton negligence, and at most the duty to refrain from creating an unreasonable risk of harm or a hazardous condition. However, we find that Danos did not breach any duty to plaintiff, nor were any actions of Danos the cause of plaintiffs injury. It was the actions of Chevron, in placing the greasy substance in the garbage bin and in requiring its contractors to enter into the dumpster in order to dump garbage which was the cause of the accident.[4]
We also reject plaintiffs argument that Danos had a duty to eliminate the unsafe condition. As found by the trial court, Danos had no control over the working conditions. Further it was established at trial that the difficulties associated with the required manner of dumping the garbage containers had previously been brought to Chevron’s attention and dis *421 cussed at a safety meeting. As it was not within Danos’s power to change the allegedly unsafe method of operation, the most that could be expected would be to inform Chevron of the problem; this had already been done.
For these reasons, we affirm the judgment of the trial court; assessing all costs of this appeal to appellant herein.
AFFIRMED.
EDWARDS, J., concurs in the result.

. Plaintiff was the only laborer of Irvin Lafont Contractors, Inc., and he performed all of the work required under the Chevron contract. His wife Audrey Lafont was also an employee of the corporation; she did the bookkeeping.

. The Leesville facility had previously been owned by the Gulf Oil Corporation and these garbage containers had apparently been left there after Chevron took over the facility.

. We express no opinion as to whether such activities of Chevron constituted negligence, as it is no longer a party to the lawsuit.