# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-30910
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

June 5, 2018

Lyle W. Cayce
Clerk

JOHN FORNAH,

      Plaintiff - Appellant

v.

SCHLUMBERGER TECHNOLOGY CORPORATION,

      Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:16-CV-14354

Before STEWART, Chief Judge, and DENNIS and HAYNES, Circuit Judges.

PER CURIAM:*

      Following an offshore accident, Plaintiff-Appellant John Fornah filed this tort suit in federal district court against multiple defendants, all of whom settled and were dismissed from the suit, except Defendant-Appellee Schlumberger Technology Corporation ("Schlumberger"). The district court granted Schlumberger's motion for summary judgment and dismissed Fornah's suit with prejudice. For the reasons that follow, we affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-30910

## I. Facts & Procedural History

In 2015, Chevron Corporation ("Chevron") hired Schlumberger to assist in a plugging and abandonment project. Specifically, Schlumberger was to perform coiled tubing wellbore cleanout in the Bay Marchand Field where Chevron U.S.A. Inc. owned a fixed platform on the Outer Continental Shelf in the Gulf of Mexico, about five miles off the coast of Louisiana. The contract between Chevron and Schlumberger, titled "International Master Agreement No. IMA/001A," provided that Schlumberger was an independent contractor.

Chevron also hired Tetra Applied Technologies, LLC ("Tetra") to assist with the project. Tetra provided a crew for plugging and abandoning services. The contract between Tetra and Chevron, titled "Master Services Contract No. CW692570," provided that Tetra was an independent contractor.

Chevron also hired Alliance Offshore, LLC ("Alliance") to assist with the project. Alliance owned and operated the M/V MISS LYNNE, a liftboat adjacent to the platform, as well as a crane that was used to lift and move the hoses in Schlumberger's coiled tubing job. Alliance was also an independent contractor.

Chevron's project was conducted 24 hours a day, with two 12-hour shifts—a day shift and a night shift. Schlumberger provided a standard six-person crew consisting of a supervisor and two assistants for each 12-hour shift.

Fornah was employed by Tetra as a rigger and his job duties included handling hoses such as those in the coiled tubing job. Tetra supervisor Michael Bergeron gave directions to Fornah with respect to completing his job duties. On September 15, 2015, Bergeron instructed Fornah that he was responsible for handling the hoses for the coiled tubing job. Specifically, once Alliance began operating its crane on the adjacent lift boat to lift Schlumberger's coiled tubing injector head into position, it was Fornah's job to guide the tubing hoses

2

during the crane lift. According to Fornah, while he was guiding the tubing, acting alone, he jerked an attached hose to untangle it from scaffolding and felt a pain in his back and shoulder.[1] Fornah continued to work without mentioning the incident to anyone and two days later, reported that he was injured. The incident was never reported to Schlumberger.

On September 1, 2016, Fornah filed suit against Tetra, Alliance, the M/V MISS LYNNE, Schlumberger, and Chevron U.S.A. Inc. In his suit, Fornah sought to recover maintenance and cure under general maritime law and also advanced claims of Jones Act negligence against Tetra, unseaworthiness of the vessel, and negligence claims under general maritime law against Alliance, Schlumberger, and Chevron. Specifically, Fornah claimed that Alliance was negligent in failing to stop an unsafe liftboat operation and that Schlumberger was negligent in conducting unsafe coiled tubing operations and for failing to provide a sufficient coiled tubing crew. Schlumberger moved for summary judgment on grounds that Schlumberger and Tetra were co-independent contractors of Chevron, that Schlumberger exercised no supervisory or operational control over Tetra personnel, and that Schlumberger owed no duty to Fornah besides that of ordinary care and did not breach that duty. Before the district court ruled on Schlumberger's summary judgment motion, it was informed that Fornah had settled his claims with all parties except Schlumberger.

---

[1] Fornah testified in his deposition that, at the time of the alleged incident, at least three other Tetra employees were working on the deck where he was working within five to seven feet of him. Fornah testified that he did not ask any of the other Tetra employees for help because they looked busy and he thought he could handle the job alone. The Tetra supervisor came and went on deck where Fornah was working. There were no Schlumberger employees or supervisors in the area where Fornah was working at the time of the alleged incident.

No. 17-30910

Approximately ten days later, the district court granted Schlumberger's motion for summary judgment.  In its reasons for judgment, the district court determined that Fornah's negligence claims were governed by Louisiana law. The district court then conducted a duty-risk analysis and concluded that, because Schlumberger and Tetra were co-independent contractors, Schlumberger did not have a duty to protect Tetra's employee, Fornah, and because Schlumberger owed no duty, it could not be in breach.  Fornah filed this appeal.

## II. Standard of Review

We conduct a de novo review of a district court's ruling on summary judgment, applying the same standard as the district court.  *Robinson v. Orient Marine Co.*, 505 F.3d 364, 365 (5th Cir. 2007) (citation omitted).  Summary judgment is appropriate if the record evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.* at 366; Fed. R. Civ. P. 56(a).  "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *See Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003) (citation omitted). "[R]easonable inferences are to be drawn in favor of the non-moving party."  *Robinson*, 505 F.3d at 366 (citation omitted).

## III. Discussion

On appeal, Fornah argues that "Schlumberger maintained operational control, at least in part, of the specialized coiled tubing operations in which Fornah participated."  Fornah claims that this assertion is supported by the affidavit of former Tetra supervisor, Steven Passman.  Fornah also claims that the facts are in dispute as to whether Schlumberger was responsible for staffing the task of guiding the coiled tubing hoses that Fornah was handling when he was allegedly injured.  He concludes on these grounds that summary

judgment was improperly rendered and that this court should reverse and remand. We disagree.

Neither party disputes that Fornah's alleged injuries occurred on a fixed platform in federal waters on the Outer Continental Shelf and thus, federal jurisdiction is established pursuant to the Outer Continental Shelf Lands Act ("OCSLA"). *See* 43 U.S.C. §§ 1333(a)(1) ("The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf[.]"); 1349(b) ("[T]he district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with . . . any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals . . . or which involves rights to such minerals[.]"). Under the OCSLA, federal law generally applies to disputes such as the one herein. *Tetra Techs., Inc. v. Cont'l Ins. Co.*, 814 F.3d 733, 738 (5th Cir. 2016). However, when there are "gaps in the federal law," the law of the adjacent state, here Louisiana, is adopted and applied as surrogate federal law "[t]o the extent that [the adjacent state's law is] applicable and not inconsistent with [the OCSLA] or with other Federal laws and regulations." *Id.*

Fornah disagrees with the district court's application of Louisiana law to his negligence claims and urges this court to instead apply general maritime law, although he concedes that "Louisiana's duty/risk negligence formulation is effectively identical to the federal maritime negligence standard, and would yield an identical result." We conclude that the district court properly applied Louisiana law to Fornah's negligence claims and continue to do so on appeal.

"[T]hree requirements must be met for state law to apply as surrogate federal law under the OCSLA." *Id.* The dispute "must arise on a situs covered by OCSLA (i.e., the subsoil, seabed, or artificial structures permanently or temporarily attached thereto)[,]" "[f]ederal maritime law must not apply of its

No. 17-30910

own force[,]" and "[t]he state law must not be inconsistent with Federal law." *Id.* Here, there is no dispute that Fornah's alleged injuries occurred on a "situs covered by the OCSLA" as they occurred on a fixed platform located on the Outer Continental Shelf. There is also no dispute that Louisiana negligence law is not inconsistent with federal maritime negligence law. The dispute on this issue rather, is whether federal maritime law applies of its own force. Fornah contends that it does. Specifically, he contends that the negligence of the Alliance crane operator gives rise to federal admiralty jurisdiction and the application of general maritime law. He also notes that this case involves the traditional maritime activity of transporting and unloading vessel cargo. We are unpersuaded by his position.

As the district court noted, for maritime law to apply of its own force, there must be both a maritime location and a connection to general maritime activity. *See Petrobras America, Inc. v. Vicinay Cadenas, S.A.*, 815 F.3d 211, 216 (5th Cir. 2016) (citing *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995)). The Supreme Court and this court, however, have both concluded that work performed on oil production platforms affixed to the Outer Continental Shelf is not maritime in nature because it is primarily related to oil and gas exploration. *Petrobras*, 815 F.3d at 218; *see also Thibodeaux v. Grasso Prod. Mgmt., Inc.*, 370 F.3d 486, 493 (5th Cir. 2004) ("Both this court and the Supreme Court have expressed the opinion that work commonly performed on oil production platforms is not maritime in nature." (citing *Herb's Welding Inc. v. Gray*, 470 U.S. 414, 423–24 (1985))). Thus, we agree with the district court that maritime law does not apply of its own force in these proceedings and consequently, that Louisiana law applies to Fornah's negligence claims.

In Louisiana, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. C.C. art.

No. 17-30910

2315(A).  Louisiana employs a "duty-risk analysis" to determine whether to impose liability.  *Duncan v. Wal-Mart La., LLC.*, 863 F.3d 406, 409 (5th Cir. 2017); *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So. 2d 627, 632–33 (La. 2006). Under this analysis, a plaintiff must show:

> [F]irst, that the defendant had a duty to conform his conduct to a specific standard (duty); second, that the defendant's conduct failed to conform to the appropriate standard (breach); third, that the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (cause in fact); fourth, that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (legal cause); and fifth, that the plaintiff suffered actual damages (damages).

*Duncan*, 863 F.3d at 409.  "Whether the defendant owes a duty is a threshold question and is a question of law."  *McCarroll v. Wood Grp. Mgmt. Servs., Inc.*, 561 F. App'x 407, 410 (5th Cir. 2014).

This court has acknowledged that independent contractors owe each other "the duty to refrain from gross, willful or wanton negligence, and . . . from creating an unreasonable risk of harm or a hazardous condition."  *Id.* (citing *Lafont v. Chevron, U.S.A.*, 593 So. 2d 416, 420 (La. App. 1st Cir. 1991)). "Independent contractors do not generally owe a duty to protect the employee of another independent contractor beyond the exercise of ordinary care that is owed to the public generally."  *Id.*  This court has also recognized that, in determining whether one independent contractor owes a duty to another independent contractor's employee, relevant considerations are whether one independent contractor employs, shares a contract with, or supervises the other's employee.  *Id.*

Neither party disputes that both Tetra and Schlumberger were independent contractors of Chevron and that Fornah was employed solely by Tetra when he was allegedly injured.  The record also reflects that Schlumberger and Chevron were parties to the International Master

7

No. 17-30910

Agreement and that Tetra and Chevron were parties to the Master Services Contract. Tetra and Schlumberger were not parties to the same contract with Chevron, nor did they have a contract with each other. The remaining question then becomes whether there is evidence in the record that Schlumberger personnel exercised supervisory control over Fornah when he was allegedly injured during the coiled tubing operations.

As previously noted, at the safety meeting prior to the beginning of Fornah's shift on September 15, 2015, Bergeron, Fornah's Tetra supervisor, informed Fornah that he was responsible for handling the hoses for the coiled tubing job. It was Bergeron's decision to task Fornah alone, rather than with additional crewmen. Fornah conceded in his deposition that he was not directed to handle the hoses for the coiled tubing job by anyone from Schlumberger.[2]

At the time of the incident, three Tetra employees were working on the deck where Fornah was working and Fornah's Tetra supervisor came and went periodically on deck where he was working. There were no Schlumberger employees or supervisors in the area where Fornah was working at the time of the alleged incident. Fornah never asked for help or additional crewmen from anyone since he believed he could handle the job alone and because the other nearby Tetra employees looked busy. Although Tetra and Schlumberger, as independent contractors hired by Chevron, worked simultaneously to fulfill their contractual individual duties owed to Chevron, there is no evidence in the

---

[2] Fornah cites to the part of Chevron and Schlumberger's International Master Agreement which states that Schlumberger has control, supervision and direction over its equipment. To the extent that Fornah is suggesting that Schlumberger's ownership of the hoses somehow results in its liability for Fornah's alleged injuries, we disagree. As the district court correctly observed, there is no evidence in the record that the hoses were intrinsically dangerous nor does ownership of the hoses somehow factor into a finding of negligence.

8

No. 17-30910

record that Schlumberger personnel supervised Tetra employees at any point during these time periods.[3]   Moreover, Fornah never reported his alleged injuries to anyone at Schlumberger.

For these reasons, we agree with the district court that Fornah failed to produce evidence supporting his argument that Schlumberger owed a duty to Fornah, or any Tetra employee, "beyond the exercise of ordinary care that is owed to the public generally."   *McCarroll*, 561 F. App'x at 410 (citing *Lafont*, 593 So. 2d at 420).   Likewise, Fornah failed to present any evidence that Schlumberger breached the duty owed between independent contractors to "refrain from gross, willful or wanton negligence, and . . . from creating an unreasonable risk of harm or a hazardous condition." *Id.*[(4)]

### IV. Conclusion

For the foregoing reasons, the district court's summary judgment in favor of Defendant-Appellee Schlumberger Technology Corporation is affirmed.

---

[3] Fornah attempts to rely on his September 5, 2017 affidavit wherein he states that he took orders and was supervised by Schlumberger "during operations related to the coiled tubing operation" while he was assigned to the M/V MISS LYNNE. To the extent that these statements can be read as contradicting Fornah's previous deposition testimony from May 23, 2017 wherein he stated that he was assigned the specific task of handling the hoses for the coiled tubing operation by his Tetra supervisor Michael Bergeron, we decline to consider the affidavit as competent summary judgment evidence. *See S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495–96 (5th Cir. 1996) ("It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony. . . When an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment.").

[4] Fornah dedicates part of his argument on appeal to the content of former Tetra supervisor Steven Passman's affidavit which generally describes Passman's experiences when he was employed with Tetra.  The district court rejected the content of the affidavit concluding that Passman's unsubstantiated statements regarding his past personal experiences as a Tetra supervisor have no bearing on the events that took place on the day Fornah was allegedly injured.  We agree. *See Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.").