# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
May 3, 2022

Lyle W. Cayce
Clerk

No. 21-30212

JOSHUA DONAHUE; ANGELA BOLTON,

*Plaintiffs—Appellants*,

*versus*

MAKAR INSTALLATIONS, INCORPORATED,

*Defendant—Appellee*,

CINCINNATI INSURANCE COMPANY,

*Third Party Defendant—Appellee*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:16-CV-13948

Before DAVIS and SMITH, *Circuit Judges*.[*]

PER CURIAM:

---

[*] Judge Kurt D. Engelhardt was originally a member of this panel but later recused. When one of the three judges of a panel becomes unable to participate, the remaining two judges are authorized to proceed with the determination of the appeal. 28 U.S.C. § 46(d); *see Yovino v. Rizo*, 139 S. Ct. 706, 709 (2019).

No. 21-30212

Plaintiffs-appellants Joshua Donahue and Angela Bolton brought this negligence suit under Louisiana law against many entities, including defendant-appellee Makar Installations, Inc. ("Makar"),[1] that participated in a construction project at the Republic National Distribution Company ("Republic") warehouse in New Orleans, Louisiana.  Makar's specific role was to build a concrete mezzanine platform. Months after Makar completed its work, plaintiff-appellant Joshua Donahue was working on the platform when an unguarded ceiling fan struck him in the head.

We conclude that the district court correctly granted summary judgment in Makar's favor. Although Makar owed a duty to Donahue under Louisiana law to refrain from creating a hazardous condition, that duty is limited in scope, and plaintiffs failed to show there is a genuine issue of fact as to whether Makar breached that duty. Therefore, we AFFIRM.

## I.     BACKGROUND

In 2015, Republic contracted with W&H Systems, Inc. ("W&H") for the construction of a new conveyer system at its warehouse. The construction took place in two stages. Stage one involved the erection of a concrete mezzanine, which would allow access to the conveyer system. W&H subcontracted with Steele Solutions, Inc. ("Steele") to design and install the new mezzanine. Steele in turn contracted with Makar to erect the mezzanine.

The new mezzanine was located close to, but higher than, a pre-existing mezzanine. The guardrails on the old mezzanine were several inches higher than the floor of the new mezzanine. Located above the mezzanines

---

[1] Third party defendant-appellee Cincinnati Insurance Company participates as Makar's insurer.

No. 21-30212

was an unguarded overhead ceiling fan. The distance between the floor of the new mezzanine and the fan was less than seven feet.

Makar began erecting the mezzanine on May 4, 2015, and completed its work by May 15, 2015. Almost every day that Makar worked at the site, the fan was turned on. Although Makar's supervisor, Antonio Torres, asked two of Republic's employees to turn off the fan, it remained on. On the second-to-last day of Makar's work, Torres was working on the new mezzanine when he stood straight up and was hit in the head by the fan. Torres called Makar's owner, notified him of the incident, and the owner discussed it with the other subcontractors. The fan was turned off the next day.

Stage two of the project involved installing the electrical components of the conveyer system. W&H subcontracted with Darana Hybrid, Inc. ("Darana") for the electrical work. Darana used labor provided by American ManPower Services, Inc. ("AMPS"). Plaintiff Joshua Donahue was one of AMPS's employees assigned to the Republic warehouse project.

During the electrical installation, workers regularly traversed from the new mezzanine to the old one by stepping over the old mezzanine's handrail. On July 25, 2015, Donahue was working on the new mezzanine, and began moving toward the old mezzanine. As he stepped on the old mezzanine's handrail, the overhead fan struck him in the head. The fan had been turned off every day during the prior two months—the entire period Donahue worked at the warehouse—but it was turned on that day.

In their fourth amended complaint, plaintiffs asserted negligence claims against Makar for the injuries Donahue suffered as a result of the accident. Makar moved for summary judgment, and the district court granted the motion. The basis for its decision was that, although Makar owed a general duty to provide a safe working environment and to refrain from

creating hazardous conditions, it did not owe several "heightened duties" that plaintiffs argued applied. The court also held that Makar did not breach its general duty because it repeatedly warned and admonished Republic about the fan, which was turned off from the date of Torres's incident until the date of Donahue's injury. Plaintiffs moved for reconsideration, and the district court denied the motion. Plaintiffs timely appealed.

## II.    DISCUSSION

### A.    Standard of Review

This Court reviews a district court's grant of summary judgment *de novo*, viewing all facts and drawing all inferences in a light most favorable to the non-moving party,[2] provided those inferences are reasonable.[3] Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[4]

### B.    Negligence

Louisiana[5] courts employ a duty-risk analysis for negligence claims.[6] This requires proof of five separate elements: (1) duty, (2) breach of duty, (3)

---

[2] *Harville v. City of Houston*, 945 F.3d 870, 874 (5th Cir. 2019) (brackets, quotations, and footnotes omitted).

[3] *See Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 468 (1992).

[4] *Harville*, 945 F.3d at 874 (brackets, quotations, and footnotes omitted).

[5] When jurisdiction is based on diversity, this court must apply the substantive law of the forum state, here Louisiana. *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)).

[6] *Bufkin v. Felipe's La., LLC*, 171 So. 3d 851, 855 (La. 2014).

No. 21-30212

cause-in-fact, (4) legal cause, and (5) damages.[7] The district court addressed only the first two elements, duty and breach. "Whether a duty is owed is a question of law; whether defendant has breached a duty owed is a question of fact."[8]

### 1.    Duty

In a recent decision, *Malta v. Herbert S. Hiller Corp.*, the Louisiana Supreme Court provided the following summary of the duty element:

> The threshold issue in any negligence action is whether the defendant owed the plaintiff a duty. A duty is an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another. Whether a duty is owed presents a question of law. The inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty.[9]

We proceed with that inquiry below.

### i.    Louisiana Jurisprudence

Louisiana courts recognize that, "at most," a contractor owes a general duty to other independent contractors "to refrain from creating an unreasonable risk of harm or a hazardous condition."[10] For example, in

---

[7] *Id.*

[8] *Brewer v. J.B. Hunt Transp., Inc.*, 35 So. 3d 230, 240 (La. 2010) (citing *Mundy v. Dep't of Health & Hum. Res.*, 620 So. 2d 811, 813 (La. 1993)).

[9] 333 So. 3d 384, 395 (La. 2021), *reh'g denied*, No. 2021-00209, 2022 WL 262977 (La. Jan. 28, 2022).

[10] *Lafont v. Chevron, U.S.A., Inc.*, 593 So. 2d 416, 420 (La. Ct. App. 1 Cir. 1991); *see also Labit v. Palms Casino & Truck Stop, Inc.*, 91 So. 3d 540, 547 (La. Ct. App. 4 Cir. 2012); *Cormier v. Honiron Corp.*, 771 So. 2d 193, 197 (La. Ct. App. 3 Cir. 2000); *Washington v. Wood Group PSN, Inc.*, 774 F. App'x 867, 869 (5th Cir. 2019) ("As between two independent contractors who work on the same premises, each owes to the employees of

No. 21-30212

*Lafont v. Chevron, U.S.A., Inc.*, the plaintiff, Irvin Lafont, was employed to perform carpentry and maintenance tasks at Chevron's Leeville shore base yard.[11] The defendant, Danos, was under contract with Chevron to maintain the yard, including by dumping garbage.[12] On the date of his injury, Lafont volunteered to assist Danos's employees in dumping garbage from a smaller dumpster into a larger one.[13] To complete the task, Lafont had to get into or on top of the larger dumpster, which had a greasy substance in it.[14] While climbing off the dumpster, the grease caused Lafont to slip and fall to the ground.[15]

The *Lafont* court acknowledged that one independent contractor owes another the general duty to refrain from creating a hazardous condition. However, notably, the court concluded that Danos did not have "a duty to eliminate the unsafe condition" because it "had no control over the working conditions."[16] Instead, "the most that could be expected" of Danos was that it bring the issue to the attention of the controlling entity.[17] Because Danos

---

the other the same duty of exercising ordinary care as they owe to the public generally. Therefore, under Louisiana law, an independent contractor has at most the duty to refrain from creating an unreasonable risk of harm or a hazardous condition." (quoting *Lafont*, 59 So. 2d at 420) (internal quotation marks and citations omitted)). Although *Washington* is not "controlling precedent," it "may be [cited as] persuasive authority." *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006) (citing 5TH CIR. R. 47.5.4).

[11] 593 So. 2d at 418.

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.* at 418, 420.

[16] *Id.* at 420.

[17] *Id.* at 421.

No. 21-30212

had informed Chevron, the court held that Danos discharged the duty it owed to Lafont.[18]

In *Ortego v. State Bank & Trust Co.*, a minor was injured when a check writing table fell on her at a bank.[19] One of the defendants, Volunteer, contracted to perform renovations at the bank, and another entity, Sampson, contracted to recover the bank's tables with formica.[20] Even though Volunteer had finished its work and left the premises by the time of the accident, the Louisiana First Circuit recognized that "the general rule that a contractor does owe an obligation to third parties to refrain from creating a hazardous condition" applied.[21] Nevertheless, the court concluded that Volunteer could not be held liable because the plaintiff "failed to bear the burden of proving that the table itself was the responsibility of Volunteer or that Volunteer had left it in a dangerous position."[22]

In short, Louisiana courts recognize that a contractor, like Makar, owes a duty to third-party workers, like Donahue, at a worksite. But plaintiffs have not pointed to any authority, nor have we found any, which support their theory as to the breadth of this "general duty."[23] Instead, the

---

[18] *Id.*

[19] 316 So. 2d 826, 827 (La. Ct. App. 1 Cir. 1975).

[20] *Id.* at 828.

[21] *Id.*

[22] *Id.* at 829.

[23] Plaintiffs argue that the district court conflated the duty and breach of duty elements, thus depriving the jury of its fact-finding role, when it concluded that Makar did not owe specific duties to (1) alter the design of the mezzanine, (2) remove the fan, (3) place physical markers around the fan, (4) refuse to work after becoming aware of the fan, and (5) remain on the job site after finishing its work. However, the Louisiana Supreme Court holds that, even when a duty exists, that duty may be limited in scope. *Roberts v. Benoit*, 605 So. 2d 1032, 1045-46 (La. 1991), *on reh'g* (May 28, 1992). Plaintiffs fail to point to any authority (or even expert opinion) demonstrating that these specific duties exist in

jurisprudence limits this duty, particularly in circumstances where the contractor lacks control or responsibility over the worksite at the time of the injury.[24]

### ii.    OSHA's Multi-Employer Doctrine

Hoping to expand the scope of Makar's duty, plaintiffs contend that the Occupational Safety and Health Administration's ("OSHA") "multi-employer doctrine" supports the existence of a Louisiana-law duty that Makar owed to all on-site personnel, including Donahue.[25] Under the multi-employer doctrine, OSHA may issue citations to "creating," "exposing," "correcting," and "controlling" employers for a violation of "occupational

---

circumstances like this case. Moreover, finding that these duties apply would conflict with existing Louisiana jurisprudence. *See Lafont*, 593 So. 2d at 420-21; *Ortego*, 316 So. 2d at 829. Thus, we conclude that the district court did not engage in impermissible fact finding when it rejected these specific duties. Rather, as a purely legal issue, the court appropriately limited the scope of Makar's duty based on its lack of control over the fan and the working conditions at the time of Donahue's injury.

[24] *Lafont*, 593 So. 2d at 420-21; *Ortego*, 316 So. 2d at 829.

[25] *See* Occupational Safety & Health Admin., CPL 02-00-124, Multi-Employer Citation Policy (1999), [hereinafter "Multi-Employer Citation Policy"]; *see also* Occupational Safety & Health Admin., CPL 02-00-160, Field Operations Manual 4-5 (2016).

safety and health standards"[26] at a multi-employer worksite, even if the employer's direct employees are not exposed to the hazard.[27]

For decades, this Court rejected the multi-employer doctrine. Instead, in *Melerine v. Avondale Shipyards, Inc.*,[28] and its progeny, this Court held that OSHA obligations existed only between an employer and its direct employees.[29] But in *Acosta v. Hensel Phelps Construction Co.*, this Court overruled that precedent and partially recognized the validity of the multi-employer doctrine.[30]

In *Acosta*, we held that OSHA may cite a "controlling employer" for a violation occurring at a multi-employer worksite, even though its own employees were not exposed to the violative condition.[31] But the reasoning and holding in *Acosta* is limited to "controlling employers,"[32] and this Court has not yet recognized OSHA's authority to cite "creating," "exposing," or

---

[26] 29 U.S.C. § 654(a)(2) ("[E]ach employer . . . shall comply with occupational safety and health standards promulgated under this Act."); 29 U.S.C. § 652(8) ("The term 'occupational safety and health standard' means a standard which requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment."). An "exposing employer" can also be cited under the "general duty clause," § 654(a)(1), which provides that "[e]ach employer . . . shall furnish to each of *his employees* employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to *his employees*." 29 U.S.C. § 654(a)(1) (emphasis added); Multi-Employer Citation Policy at § X.A.1.

[27] *See* Multi-Employer Citation Policy at § X.A; *Acosta v. Hensel Phelps Constr. Co.*, 909 F.3d 723, 728 (5th Cir. 2018).

[28] 659 F.2d 706, 711 (5th Cir. Unit A Oct. 1981).

[29] *See Acosta*, 909 F.3d at 727.

[30] *Id.* at 743.

[31] *Id.*

[32] *Id.* at 732-43.

No. 21-30212

"correcting" employers. Plaintiffs argue that we should (1) extend *Acosta* to these sorts of employers and (2) recognize that Louisiana law imports an obligation on contractors to comply with OSHA's multi-employer doctrine.

Assuming without deciding that that plaintiffs are correct on both arguments, their claim still fails because any duty Makar had under OSHA's multi-employer doctrine is materially identical to the "general duty" recognized by Louisiana courts. Plaintiffs argue that Makar was an "exposing," "correcting," and "creating" employer. But Makar's purported role as an "exposing employer"[33] is irrelevant here: OSHA's policy statement makes clear that an "exposing employer['s]" duties are the same as a "creating employer" when it creates the hazard.[34] And, plaintiffs' characterization notwithstanding,[35] there is no evidence that Makar was a "correcting employer," i.e., "[a]n employer who is engaged in a common undertaking, on the same worksite, as the exposing employer and is responsible for correcting a hazard."[36] Plaintiffs have not pointed to any evidence showing that Makar had the "responsib[ility] for correcting" the hazard created by the unguarded fan. Instead, uncontroverted evidence

---

[33] An "exposing employer" is "[a]n employer whose own employees are exposed to the hazard." Multi-Employer Citation Policy at § X.C.1.

[34] *Id.* at § X.C.2. When an "exposing employer" does not create the violative condition, its obligations are limited to its own employees. *Id.* at § X.C.2.

[35] Plaintiffs' expert, Douglas Moore, opined that Makar was a correcting employer "by virtue of a prior injury to one of its employees." But Moore also acknowledges that it was Republic, not Makar, who had "responsibility to remove the fan . . . or assure that it was locked and tagged out while personnel were working in the area." Thus, Moore's determination that Makar was a "correcting employer" is merely a "conclusory statement," that does not create a genuine fact dispute. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007) ("Conclusory statements are not competent evidence to defeat summary judgment.").

[36] Multi-Employer Citation Policy at § X.D.1.

demonstrates that Makar exercised no control over the fan itself or had the authority to implement corrective measures.

That leaves Makar's role as a "creating employer," defined as an entity that "caused a hazardous condition that violates an OSHA standard."[37] Similar to the previously discussed "general duty to refrain from creating a hazard," the obligation owed by a "creating employer" is to not "create violative conditions."[38] Further, just as Louisiana courts have limited the "general duty," OSHA will not automatically cite every employer that creates a violative condition. Rather, as an example in the policy statement makes clear, an employer that "caused a hazardous condition" and "lack[s] authority to fix" the condition cannot be cited when it takes "immediate and effective steps to keep all employees away from the hazard and notifie[s] the controlling employer of the hazard."[39]

Ultimately, plaintiffs' arguments about OSHA's multi-employer doctrine make no difference in this lawsuit. To the extent the doctrine supports the existence of a duty Makar owed, Louisiana jurisprudence already recognizes that duty.

### 2.    Breach of Duty

Although Louisiana law provides that the breach of duty element is a question of fact for the jury, summary judgment in favor of a defendant is appropriate when a plaintiff fails to introduce evidence sufficient to create a genuine dispute of fact on this issue.[40] In its order granting Makar's motion

---

[37] *Id.* at § X.B.1.

[38] *Id.* at § X.B.2.

[39] *Id.* at § X.B.2.b.

[40] *See Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003); *see also Fornah v. Schlumberger Tech. Corp.*, 737 F. App'x 677, 682 (5th Cir. 2018) (affirming a

for summary judgment, the district court stated that "the evidence speaks to how Makar effectively discharged its duty: its warnings and repeated admonitions resulted in the fan remaining off from the day after Torres' injury to the day of Donahue's injury."

We agree with the district court. There is no dispute that Makar's actions before and after Torres's injury—warning Republic and W&H of the danger, asking for the fan to be turned off, and requesting that Republic remove the fan—ultimately led to the fan's being turned off. By the time Makar finished its work and left the premises, and for the next two months, the fan remained off. The summary judgment record contains no evidence that the fan was dangerous during that period. Moreover, Makar lacked "authority," "control," or "responsibility" over the fan (or any protective measures) even while it was on the jobsite, let alone two months after it had departed.[41] Because Makar effectively eliminated the danger posed by the fan at the time it left the premises and provided notice[42] to the entities with

district court's grant of summary judgment where plaintiff "failed to present any evidence that [defendant] breached the duty owed between independent contractors to refrain from gross, willful or wanton negligence, and from creating an unreasonable risk of harm or a hazardous condition." (internal quotation marks and alterations omitted)).

[41] Plaintiffs' expert, Moore, opined that the protective measures taken were insufficient. But the (in)adequacy of the protective measures falls outside the scope of the duty Makar owed. There is no evidence that Makar had "authority" over the fan itself, any lock-out/tag-out procedure, or any other protective measures. Multi-Employer Citation Policy at § X.B.2.b. And at the time of Donahue's injury, two months after Makar was even on the worksite, Makar completely lacked "control over the working conditions." *Lafont*, 593 So.2d at 420. Once Makar succeeded in having the fan turned off, provided notice of the danger to the entities in control of the worksite, and left the premises, it had no duty to protect against another party's re-creating the hazard. That some unidentified individual turned the fan on months after Makar left the worksite cannot be attributed to the inadequacy of Makar's efforts.

[42] Plaintiffs attempt to manufacture a fact dispute by questioning the adequacy of Makar's warnings. That effort fails. Plaintiffs point to deposition testimony by Carlos Murillo, Republic's corporate representative. Murillo stated that he "was aware of a prior

No. 21-30212

control over the working conditions, there is no genuine dispute that Makar discharged the duty it owed Donahue.

We agree with the district court that plaintiffs failed to create a genuine dispute of fact as to whether Makar breached a duty it owed to Donahue. Consequently, the district court did not err when it found that Makar was entitled to summary judgment on plaintiffs' negligence claim.

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

injury" at the warehouse but "was never sure [if] it was a fan or a beam." But even if Murillo was personally unaware of the specifics of the accident, that does not create a dispute that Makar provided the warnings in the first instance, or that they led to the fan's being turned off. Plaintiffs offered no evidence to controvert Torres's testimony that he alerted two of Republic's workers about the danger before his accident and, after the accident, told Republic's employees to remove the fan.